**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

In re:

Jose F. De La Hoz and                               Case No.: 9:10-bk-12976-FTM
Elsa M. De La Hoz,                                  Chapter 13

_____Debtors._____/

In re:

Michael Manganaro and                               Case No.: 9:10-bk-21209-FTM
Barbara Manganaro,                                  Chapter 13

_____Debtors._____/

In re:

Walter Ruiz and                                     Case No.: 9:10-bk-18428-FTM
Larysa Ruiz,                                        Chapter 13

_____Debtor._____/

In re:

James Ashley Williams and                           Case No.: 9:10-bk-08038-FTM
Sydney Lou Blake Williams,                          Chapter 13

_____Debtor._____/

In re:

Victor James Drobnic,                               Case No.: 9:10-bk-13057-FTM
                                                    Chapter 13

_____Debtor._____/

**CONSOLIDATED MEMORANDUM OPINION ON
<u>DEBTORS' ELIGIBILITY FOR CHAPTER 13 RELIEF</u>**

Section 109(e) limits relief under Chapter 13 to individuals with less than $1,081,400.00

in secured debt and $360,475.00 in unsecured debt. Each of the Debtors' bankruptcy schedules

reflect debt exceeding the Section 109(e) limits. The Debtors claim they are eligible for Chapter 13 relief because (i) the filed claims are less than the applicable Section 109(e) limits; or (ii) their schedules reflect that their debts are contingent and unliquidated.

Ordinarily, the Court is limited to reviewing the Debtors' schedules in determining the Debtors' eligibility for Chapter 13 relief. The Court cannot look to the proofs of claim actually filed to determine whether the Debtors are eligible for relief under Chapter 13 when the Debtors are otherwise ineligible on the face of their schedules. The Court, however, can look beyond the Debtors' schedules to determine whether certain debts are contingent or unliquidated if the Debtors did not file their schedules in good faith.

The Debtors in three of the cases before the Court—*In re De La Hoz*, *In re Manganaro*, and *In re Ruiz*—are ineligible for Chapter 13 relief on the face of their schedules because their schedules reflect noncontingent and liquidated debts exceeding the Section 109(e) limits. The proofs of claims actually filed in those cases are of no consequence in determining the Debtors' eligibility for Chapter 13 relief. The Debtors in the remaining two cases—*In re Williams* and *In re Drobnic*—did not file their schedules in good faith. So the Court is free to look beyond their schedules to determine whether the scheduled debts are, in fact, contingent and unliquidated. In doing so, the Court determines that the Debtors in *In re Williams* have noncontingent and liquidated unsecured debts exceeding the Section 109(e) limits. As a consequence, they are ineligible for Chapter 13 relief as well. At this point, the Court cannot determine to a legal certainty whether the Debtor's unsecured debts in *In re Drobnic* are contingent. Accordingly, the Court will defer ruling on the Debtor's eligibility pending a final evidentiary hearing.

## Background

*In re De La Hoz*, Case No. 9:10-bk-12976-FTM

On May 28, 2010, Jose and Elsa De La Hoz filed their Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. The De La Hozes scheduled five (5) secured claims

2

totaling $749,427.00 on their Amended Schedule D. The unsecured portion of those claims is $351,051.00. The De La Hozes also scheduled eleven (11) unsecured nonpriority claims totaling $95,834.00 on Schedule F. The De La Hozes did not designate any of the secured or unsecured claims as contingent, unliquidated, or disputed. Thus, the De La Hozes scheduled noncontingent, liquidated unsecured claims in the total amount of $446,885.00.

As of the claims bar date, creditors had filed secured claims totaling $563,314.92 and unsecured claims totaling $63,893.67. After the claims bar date, one creditor filed an unsecured claim in the amount of $371.08. Thus, creditors have now filed unsecured claims totaling $64,264.75.

*In re Manganaro*, Case No. 9:10-bk-21209-FTM

On August 31, 2010, Michael and Barbara Manganaro filed their Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. The Manganaros scheduled four (4) secured claims totaling $866,336.00 on their Amended Schedule D.[1] The unsecured portion of those claims is $326,003.00. The Manganaros also scheduled ten (10) unsecured nonpriority claims totaling $223,821.96 on Schedule F.[2] The Manganaros did not designate any of the secured or unsecured claims as contingent, unliquidated, or disputed.[3] Thus, the Manganaros scheduled noncontingent, liquidated unsecured claims in the total amount of $549,824.96.

As of the claims bar date, creditors had filed secured claims totaling $71,116.00 and unsecured claims totaling $54,514.63. Two days after the claims bar date, a creditor (Leaf Financial Corporation) filed a proof of claim in the amount of $39,490.08 (Claim No. 7-1). Approximately two weeks after the claims bar date, RBC Bank moved for leave to file a late-filed proof of claim in the amount of $202,002.52. The Manganaros later consented to RBC

---

[1] The Manganaros also listed two (2) secured claims (owed to RBC Bank) in an unknown amount on Schedule D.

[2] The Manganaros also scheduled one (1) unsecured nonpriority claim in an unknown amount on Schedule F.

[3] The Manganaros designated RBC's claims as contingent, unliquidated, and disputed.

3

filing a late-filed unsecured claim in the amount of $195,000.00. Thus, according to the claims register, creditors have filed unsecured claims totaling $289,004.71.

*In re Ruiz*, Case No. 9:10-bk-18428-FTM

On July 30, 2010, Walter and Larysa Ruiz filed their Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. The Ruizes scheduled nine (9) secured claims totaling $1,504,743.16 on Schedule D.[4] The unsecured portion of those claims is $698,320.16. The Ruizes also scheduled twenty-seven (27) unsecured nonpriority claims totaling $18,124.27 on Schedule F.[5] The Ruizes did not designate any of the secured or unsecured claims as contingent or unliquidated. Thus, the Ruizes scheduled noncontingent, liquidated unsecured claims in the total amount of $716,444.43.

As of the claims bar date, creditors had filed secured claims totaling $418,843.65 and unsecured claims totaling $11,822.78. Almost two weeks after the claims bar date, the Ruizes filed a secured claim in the amount of $99,278.00 on behalf of a creditor (First Horizon Home Loans) (Claim No. 8-1). Thus, the total amount of secured claims filed by or on behalf of creditors is $518,121.65.

*In re Williams*, Case No. 9:10-bk-08038-FTM

On April 7, 2010, James and Sydney Williams filed their Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. The Williamses scheduled six (6) secured claims totaling $1,194,317.18 on Schedule D.[6] The unsecured portion of those claims is $536,817.18. The Williamses also scheduled twenty-two (22) unsecured nonpriority claims totaling $332,772.00 on Schedule F.[7] Thus, the Williamses scheduled unsecured claims in the total

---

[4] The Ruizes also scheduled one (1) secured claim in an unknown amount on Schedule D.

[5] The Ruizes also scheduled one (1) unsecured nonpriority claim in an unknown amount on Schedule F.

[6] The Williamses also scheduled one (1) secured claim in an unknown amount on Schedule D.

[7] The Williamses also scheduled ten (10) unsecured nonpriority claims in an unknown amount on Schedule F.

amount of $869,589.18. The Williamses designated each of the secured claims and twenty (20) of the twenty-two (22) unsecured claims as contingent, unliquidated, and disputed.[8] As of the claims bar date, creditors had filed secured claims totaling $392,219.78 and unsecured claims totaling $731,188.13.

*In re Drobnic*, Case No. 9:10-bk-13057-FTM

On May 28, 2010, Victor James Drobnic filed his Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. Drobnic scheduled four (4) secured claims totaling $1,260,898.00 on Schedule D. The unsecured portion of those claims totaled $798,000.00. Drobnic also scheduled four (4) unsecured nonpriority claims totaling $43,195.99 on Schedule F. Thus, Drobnic scheduled unsecured claims in the total amount of $841,195.99. Drobnic designated three (3) of the four (4) secured claims and all of the unsecured claims as contingent, unliquidated, and disputed (Drobnic designated the remaining unsecured claim as unliquidated and disputed, but not contingent).

As of the claims bar date, creditors had filed secured claims totaling $365,561.71 and unsecured claims totaling $215,792.50. Several months after the claims bar date, Drobnic filed an unsecured claim in the amount of $300.00 on behalf of Bank of America. And one of Drobnic's creditors withdrew its claim in the amount of $241,900.00 secured claim and $208,989.82 unsecured claim. Thus, creditors have filed secured claims totaling $123,661.71 and unsecured claims totaling $7,102.68.

---

[8] The Williamses designated the ten (10 secured claims in an unknown amount as contingent, unliquidated, and disputed.

*The Motions to Dismiss and Objections to Confirmation*

The Chapter 13 Trustee moved to dismiss the Debtors' Chapter 13 cases in *In re De La Hoz*, *In re Manganaro*, *In re Ruiz*, and *In re Drobnic* because, according to the Chapter 13 Trustee, the Debtors' debt exceeds the statutory limit for Chapter 13 cases. The Chapter 13 Trustee also objected to the Debtors' confirmation in the case of *In re Williams* for the same reason.

The Debtors in *In re De La Hoz*, *In re Manganaro*, and *In re Ruiz* responded that they are eligible for Chapter 13 relief notwithstanding their schedules because the total claims actually filed in those cases are below the statutory limits. The Debtors in *In re Drobnic* and *In re Williams* responded that they are eligible because their debts are either contingent or unliquidated.

The Court originally granted the Chapter 13 Trustee's motion to dismiss in *In re Ruiz*. But the Ruizes moved for reconsideration of the Court's dismissal Order. And the Court took the Ruizes' motion for reconsideration, along with the Chapter 13 Trustee's motions to dismiss and his objections to confirmation in the remaining cases, under advisement.

**Issue**

The issue before the Court is whether the Debtors are eligible for Chapter 13 relief. That issue, in turn, hinges on two questions: First, is the Court limited to reviewing the Debtors' schedules in determining the Debtors' eligibility for Chapter 13 relief? Or is the Court free to consider the proofs of claim actually filed in these cases to determine whether the Debtors' debt exceeds the Section 109(e) limits? Second, if the Court's review is limited to the Debtors' schedules, is the Court bound to accept the Debtors' representations that certain claims are contingent or unliquidated?

6

## Legal Analysis

Bankruptcy Code Section 109(e) governs who may be a debtor under Chapter 13.[9] Section 109(e) limits Chapter 13 relief to individuals with regular income owing secured debts less than $1,081,400 and unsecured debts less than $360,475.[10] Importantly, only noncontingent and liquidated debts are included when calculating Chapter 13 eligibility.[11] And based on Section 109(e)'s plain language, courts calculate those debts as of the petition date.[12]

*Can Courts Look Beyond a Debtor's Schedules to Determine Chapter 13 Eligibility?*

Because an individual's debts are calculated as of the petition date, the majority of courts, including the Sixth, Seventh, and Ninth Circuit Courts of Appeal, have held that a Bankruptcy Court should not look beyond a debtor's schedules in determining the debtor's eligibility for Chapter 13 relief unless the court determines that the debtor did not file its schedules in good faith.[13] The leading case is the Sixth Circuit Court of Appeals' 1985 decision in *In re Pearson*, where the court first articulated the majority view.[14]

In *Pearson*, a creditor (Comprehensive Accounting) obtained an arbitration award in the amount of $127,450.12 against the debtors. The arbitration award required the debtors to transfer certain collateral to Comprehensive Accounting if they failed to timely satisfy the

---

[9] 11 U.S.C. § 109(e) (2010).

[10] *Id.* Under Section 104(b), the Section 109(e) debt limits are adjusted every three years to reflect changes in the cost of living. 11 U.S.C. § 104(b). The secured and unsecured debt limits were raised to $1,081,400 and $360,475, respectively, for cases filed after April 1, 2010. 11 U.S.C. § 109(e). Since all of these cases were filed after April 1, 2010, the same Section 109(e) debt limits apply to all the cases.

[11] 11 U.S.C. § 109(e).

[12] *Id.*; *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1073 (9th Cir. 1999); *In re Jerome*, 112 B.R. 563, 566 (Bankr. S.D.N.Y. 1990); *In re Robertson*, 84 B.R. 109, 112 (Bankr. S.D. Ohio 1988).

[13] *See e.g., Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001); *In re Lybrook*, 951 F.2d 136, 138-39 (7th Cir. 1991); *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756-58 (6th Cir. 1985); *In re Redburn*, 193 B.R. 249, 254-56 (Bankr. W.D. Mich. 1996); *In re Rigdon*, 94 B.R. 602, 604 (Bankr. W.D. Mo. 1988); *In re Robertson*, 84 B.R. at 112; *In re Koehler*, 62 B.R. 70, 72 (Bankr. D. Neb. 1986).

[14] *In re Pearson*, 773 F.2d at 756-58.

arbitration award. Shortly after Comprehensive Accounting obtained the arbitration award, the debtors filed their voluntary petition for relief under Chapter 13. The debtors included Comprehensive Accounting on Schedules D and F, but they stated that the amount of Comprehensive Accounting's secured and unsecured claims was disputed and unknown. Comprehensive Accounting timely filed a secured claim against the debtors' estate. Later, the debtors amended their schedules to include Comprehensive Accounting's claim as an unsecured claim in the amount of $127,450.12. The debtors' amendment pushed their total unsecured debts over the Section 109(e) unsecured debt limit.

Comprehensive Accounting objected to the debtors' confirmation because the debtors' unsecured debts, as reflected in their amended schedules, exceeded the applicable Section 109(e) limit. The Bankruptcy Court ruled that the debtors were eligible for Chapter 13 relief because the debtors' unsecured debt was less than the Section 109(e) unsecured debt limit as of the petition date.[15] The District Court affirmed the Bankruptcy Court's ruling, holding that the debtors met the eligibility requirements at the time they filed their bankruptcy petition. According to the district court, events occurring after the petition date cannot disqualify a debtor from Chapter 13 relief.[16]

After tracing Chapter 13's legislative history in some detail, the *Pearson* court noted that Bankruptcy Courts were divided concerning the nature and scope of their inquiry in determining Chapter 13 eligibility. Some courts held hearings to determine the liquidated amount of disputed claims. Those courts reasoned that to do otherwise would subject the Bankruptcy Court's jurisdiction to the accuracy and good faith of both creditors and debtors. Other courts primarily

---

[15] *Id.* at 752.

[16] *Id.*

8

relied on the debtor's schedules, checking only to see if the debtor filed the schedules in good faith.

The *Pearson* court concluded that limiting the scope of judicial inquiry primarily to the debtor's schedules was more harmonious with congressional intent and with Section 109(e)'s statutory scheme for three reasons: First, and perhaps most important, Section 109(e) provides that the eligibility computation is based on the petition date; it says nothing about computing eligibility at some later point in time.[17]  Second, the fact that evidence must be taken to determine the amount of the claim indicates that, until then, the claim was unliquidated.[18]  Third, the Bankruptcy Code contemplates that a Chapter 13 plan be adopted and implemented in a short period of time.  Rule 3015 of the Bankruptcy Code provides that a plan "shall be filed within 15 days [after the filing of the petition] and such time shall not be extended except for cause shown," and unless the court orders otherwise, the debtor must begin making the proposed plan payments within 30 days after filing a plan.[19]  So within 45 days of the Chapter 13 bankruptcy petition, the debtor should be making payments under the proposed plan.

The *Pearson* court concluded that the Bankruptcy Court properly determined that the debtors filed their initial schedules in good faith.[20]  Although the arbitration award had established the amount of the debt, the award did not indicate to what extent the debt was secured.  The fact that Comprehensive Accounting filed its proof of claim as a secured claim supported the bankruptcy court's good faith determination.  Because their schedules reflected unsecured debts below the applicable Section 109(e) limit as of the petition date, the *Pearson*

---

[17] *Id.* at 756.

[18] *Id.*

[19] *Id.* (citing 11 U.S.C. § 1326).

[20] *Id.* at 758.

court affirmed the Bankruptcy Court's ruling that the debtors were eligible for Chapter 13 relief.[21]

Since *Pearson*, courts following the majority view have ruled that a debtor is ineligible for Chapter 13 relief where the debtor's schedules on their face reflect debt exceeding the applicable Section 109(e) limits.[22] For instance, the court in *In re Grew* determined that the debtor was ineligible for Chapter 13 relief because her schedules reflected noncontingent and liquidated unsecured debts exceeding the applicable Section 109(e) limit, even though creditors filed proofs of claim well below that limit.[23]

The *Grew* court held that it was limited to reviewing the debtor's schedules absent an allegation that the debtor filed her schedules in bad faith.[24] Because there was no bad faith allegation in that case, the *Grew* court determined that the debtor was ineligible for Chapter 13 relief based on the debtor's schedules alone.[25] The court did note in passing, though, that the amount of claims actually filed in that case would not have had any effect on the debtor's eligibility for Chapter 13:

> The fact that the total claims actually filed are below the statutory cap is of no consequence, even if it is [an] appropriate fact for consideration. It is a well-known fact that frequently, numerous creditors fail to file claims, especially in a Chapter 7 case, which originally was noticed pursuant to F.R.B.P. 2002(e) as a no dividend case.[26]

---

[21] *Id.*

[22] *See e.g., In re Murphy*, 374 B.R. 73, 75, 77-78 (Bankr. W.D.N.Y. 2007); *In re Hansen*, 316 B.R. 505, 506, 508-10 (Bankr. N.D. Ill. 2004); *In re Grew*, 278 B.R. 619, 620-22 (Bankr. M.D. Fla. 2002).

[23] *In re Grew*, 278 B.R. at 620-22.

[24] *Id.* at 622.

[25] *Id.*

[26] *Id.*

A minority of courts have held, seemingly contrary to the majority view, that a court can look beyond a debtor's schedules to determine the debtor's eligibility for Chapter 13 relief even absent allegations of bad faith.[27] The court in *In re Newman*, for instance, looked at the proofs of claim actually filed in that case to determine whether the debtor was eligible for Chapter 13 relief despite no allegations of bad faith.[28] There, the debtor scheduled unsecured debt in the amount of $216,526.00, which was below the applicable Section 109(e) limit. The debtor included unsecured personal income tax debts in the amount of $104,537.00 on his schedules. The IRS initially filed an unsecured claim in the amount of $161,930.50, and then later amended its claims three times. The IRS's final amended claim was an unsecured claim in the amount of $199,330.61. The IRS's proof of claim, when added with the debtor's scheduled unsecured debt, pushed the debtor over the applicable Section 109(e) debt limit. Thus, the IRS moved to dismiss the debtor's Chapter 13 case.

At the outset, the *Newman* court noted that it was not limited to reviewing the debtor's schedules to determine the debtor's eligibility for Chapter 13 relief:

> [E]ven when there has been no allegation of a lack of good faith in the preparation of the Debtor's schedules, the Court can look beyond the schedules to determine whether the Debtor's debts exceed the statutory amounts.[29]

Instead, the court explained its focus was on the phrase "'non-contingent, liquidated, unsecured debts of less than $269,250.'"[30] The *Newman* court ultimately determined that the IRS's proof

---

[27] *Lucoski v. IRS*, 126 B.R. 332, 336-38 (S.D. Ind. 1991); *In re Steffens*, 343 B.R. 696, 698 (Bankr. M.D. Fla. 2005); *In re Newman*, 259 B.R. 914, 917-21 (Bankr. M.D. Fla. 2001); *In re Sullivan*, 245 B.R. 416, 418-19 (N.D. Fla. 1999).

[28] *In re Newman*, 259 B.R. at 919-21.

[29] *Id.* at 917 (citing *In re Sullivan*, 245 B.R. at 418).

[30] *Id.*

of claim was noncontingent and liquidated. Consequently, the debtor's unsecured debts exceeded the Section 109(e) limits, and the court dismissed the case.[31]

The court in *In re Steffens* reached an identical result.[32] In that case, the debtors claimed they were eligible for Chapter 13 relief because their scheduled unsecured debt was below the Section 109(e) limit. Based on the claims actually filed, though, the debtors' unsecured debt ($308,471.95) was just over the applicable Section 109(e) limit. A creditor claimed the court should look beyond the debtors' schedules to the proofs of claim actually filed and rule that the debtors were ineligible for Chapter 13 relief.

The *Steffens* court initially noted that courts had differed on whether courts should look beyond a debtor's schedules in determining Chapter 13 eligibility.[33] On the one hand, the *Pearson* and *Scovis* courts had held that a court's review is primarily limited to a debtor's schedules absent a showing of bad faith.[34] On the other hand, two bankruptcy courts in the Eleventh Circuit—*Newman* and *In re Sullivan*—had held that courts could look beyond a debtor's schedules in making that determination regardless of any bad faith allegations.[35] The *Steffens* court decided to follow *Newman* and *Sullivan* and look beyond the debtors' schedules.[36] In doing so, the court observed that the proofs of claim filed in that case exceeded the Section 109(e) limit. As a consequence, the debtors were not eligible for Chapter 13 relief.[37]

---

[31] *Id.* at 919-21.

[32] *In re Steffens*, 343 B.R. at 698.

[33] *Id.* at 697-98.

[34] *Id.* (citing *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001); *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756 (6th Cir. 1985)).

[35] *Id.* (citing *In re Newman*, 259 B.R. 914, 917 (Bankr. M.D. Fla. 2001); *In re Sullivan*, 245 B.R. 416, 418 (N.D. Fla. 1999)).

[36] *Id.* at 698.

[37] *Id.*

The Eleventh Circuit has not yet addressed the proper scope of the Court's review in determining a debtor's eligibility for Chapter 13 relief. Consequently, the Court is free to follow either the majority or minority view. The Debtors, not surprisingly, urge this Court to follow the minority view. But the Court is persuaded that the majority view is the better view. As the *Pearson* court explained, the majority view is more consistent with Congress' intent in enacting Section 109(e). Also, debtors should expect to be bound by the representations they make in their schedules (regarding the amount of the debt or whether the debt is noncontingent and liquidated), particularly considering those representations are made under the penalty of perjury.

In any event, the minority view does not help the Debtors here. All of the cases the Debtors rely on in support of the minority view involve debtors whose scheduled secured or unsecured debt is *below* the applicable Section 109(e) limit.[38] And in each of those cases, the Bankruptcy Court looked beyond the debtor's schedules and determined that the debtor was actually *ineligible* for Chapter 13 relief.[39] The Debtors have not cited, nor is the Court aware of, any case where a debtor's scheduled debts exceeded the Section 109(e) limits and the court nevertheless looked beyond the debtor's schedules and determined (based on proofs of claim or other evidence) that the debtor was, in fact, eligible for Chapter 13 relief.

Of course, this consistent theme should not be surprising. After all, the reason courts look beyond a debtor's bankruptcy schedules is to prevent a debtor from effectively circumventing the Section 109(e) limits: "The reason for allowing courts to look beyond the

---

[38] *United States v. Verdunn*, 89 F.3d 799, 800-03 (11th Cir. 1996); *Hounsom v. United States*, 325 B.R. 319, 321 (M.D. Fla. 2005); *In re Steffens*, 343 B.R. at 697; *see also In re Hansen*, 316 B.R. 505, 509 n.1 (Bankr. N.D. Ill. 2004) (explaining that "[d]ecisions where courts have taken this [minority] view, moreover, have typically involved a creditor contending that the case should be dismissed because the debtor's debts 'exceed[ed] the statutory amounts' despite what the schedules said").

[39] *Verdunn*, 89 F.3d at 800-03; *Hounsom*, 325 B.R. at 323-28; *In re Steffens*, 343 B.R. at 697-98.

13

schedules and petitions is to prevent a debtor from circumventing the rules."[40]  Yet, that is what the Debtors are seeking to do in these cases.

The Debtors in *In re De La Hoz*, *In re Manganaro*, and *In re Ruiz* represented under oath that their noncontingent and liquidated unsecured debts as of the petition date exceed the applicable Section 109(e) unsecured debt limit.  But the Debtors ask the Court to ignore those verified representations and look solely to the proofs of claim actually filed.  As the *Grew* court explained, the proofs of claim actually filed are of no consequence because creditors fail to file proofs of claim for many reasons.  To look beyond the schedules at the proofs of claim actually filed in these cases would permit the Debtors to accomplish what courts following the minority view sought to avoid: permitting the Debtors to circumvent the Section 109(e) debt limits.

Accordingly, the Court holds that where a debtor's schedules reflect debts in excess of the Section 109(e) limits, the Court cannot look beyond the debtor's schedules at the proofs of claim actually filed to determine the debtor's Chapter 13 eligibility.  The Debtors in *In re De La Hoz*, *In re Manganaro*, and *In re Ruiz* are bound by the verified representations in their schedules.  Because their schedules reflect that they owed noncontingent and liquidated unsecured debts in excess of the Section 109(e) limit as of the petition date, the Debtors in those cases are ineligible for Chapter 13 relief.

*Is the Court Bound by the Debtors' Representations that Certain Debts are Contingent or Unliquidated?*

But where does that leave the Debtors in the cases of *In re Williams* and *In re Drobnic*? While the amount of the Debtors' unsecured debt in those cases exceeds the Section 109(e) unsecured debt limit, the Debtors have designated virtually all of their unsecured debts as contingent and unliquidated.  If the Court accepts the Debtors' representations in their schedules

---

[40] *In re Rifkin*, 124 B.R. 626, 629 (Bankr. E.D.N.Y. 1991) (citing *U.S. v. Edmonston*, 99 B.R. 995, 999 (E.D. Cal. 1989)); *see also In re Jerome*, 112 B.R. at 566 (citing *Edmonston*, 99 B.R. at 999).

that virtually all of their debt is contingent and unliquidated, the Debtors are well below the applicable Section 109(e) limit.

The Court is not required to, and in fact does not, accept those representations. Under the majority view, courts can look beyond a debtor's schedules if the debtor fails to file its schedules in good faith.[41] In finding a lack of good faith, some courts have "emphasized an intent to abuse the judicial process and the purposes of the reorganization process."[42] The court in *In re Rigdon*, for instance, concluded that the debtor filed his schedules in bad faith where the debtor purportedly was unable to determine the amount of certain priority unsecured claims on the petition date, but was able to determine or estimate those same claims two weeks later when he filed his proposed Chapter 13 plan.[43] Other courts have held that bad faith exists when it appears to a legal certainty that the claim is not what the debtor reported.[44]

The Court concludes that the Debtors in *In re Williams* and *In re Drobnic* filed their schedules in bad faith. The Williamses designated all seven (7) of their secured claims and twenty (20) of their twenty-two (22) unsecured claims as contingent, unliquidated, and disputed. Similarly, Drobnic designated three (3) of his four (4) secured claims and all four (4) unsecured claims as contingent and unliquidated. And the one secured claims that he did not designate as both contingent and unliquidated, he designated as unliquidated. Designating virtually all of the

---

[41] *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756 (6th Cir. 1985); *see also In re Rigdon*, 94 B.R. 602, 605 (Bankr. W.D. Mo. 1988) (explaining that "[a]lthough good faith is usually referring to the good faith filing of a plan, there is also an implied good faith filing of a petition requirement"); *In re Redburn*, 193 B.R. 249, 256 (Bankr. W.D. Mich. 1996) (explaining that the "Debtor cannot circumvent this [Section 109(e)] limitation on eligibility by simply ignoring what he knows and listing the amounts of the debts as 'unknown' in his schedules").

[42] *Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.)*, 825 F.2d 296, 298 (11th Cir. 1987) (quoting *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Rigdon*, 94 B.R. at 605 (quoting *In re Natural Land Corp.*, 825 F.2d at 298).

[43] *In re Rigdon*, 94 B.R. at 605-06.

[44] *In re Smith*, 419 B.R. 826, 829 (Bankr. C.D. Cal. 2009) (citing *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982-83 (9th Cir. 2001)).

scheduled secured and unsecured claims as contingent or unliquidated, particularly where the debtor would otherwise far exceed the Section 109(e) debt limits, certainly raises, at a minimum, an inference that the debtor is abusing the judicial process.

Moreover, a review of the proofs of claim filed in *In re Williams* confirms that the scheduled debts are not what the Williamses reported (i.e., the debts are not contingent and unliquidated). For instance, the Williamses designated the following debts totaling $342,750.22 as contingent and unliquidated: (i) two state court final judgments (based on a delinquent credit card and loan) (Claim Nos. 6 and 7); (ii) eight delinquent credit card accounts (Claim Nos. 1, 3, 4, 5, 8, 10, 15 and 18); (iii) four delinquent loans (Claim Nos. 2, 11, 12 and 13); and (iv) two open accounts (Claim Nos. 9 and 14).

Looking at those proofs of claim, the debts, on their face, are not contingent or unliquidated because (i) all of the events giving rise to liability for those claims occurred pre-petition; and (ii) the amount of those claims is readily calculable.[45] In fact, the Williamses implicitly conceded that these claims are not contingent or unliquidated by objecting to other claims as contingent or unliquidated (Claim Nos. 5, 8, 16 and 17), but not objecting to any of these claims on that basis. Thus, the Court can determine to a legal certainty that Claim Nos. 1-15 and 18 are noncontingent and liquidated.

Additionally, the Williamses scheduled the secured claim owed to America's Servicing Company as contingent and unliquidated. But the proof of claim filed (Claim No. 19) demonstrates that America's Servicing Company's claim is, in fact, noncontingent and liquidated. The unsecured portion of that claim, according to the Williamses' schedules, is $196,298.78. Adding that amount to the Williamses' noncontingent, liquidated unsecured claims pushes the Williamses over the Section 109(e) limit. Accordingly, the Williamses are ineligible for Chapter 13 relief.

---

[45] *Hounsom v. United States*, 325 B.R. 319, 323-24 (M.D. Fla. 2005)

At this point, the Court is unable to determine to a legal certainty whether Drobnic's debts exceed the Section 109(e) limit. That determination hinges on Drobnic's liability under a single personal guarantee in favor of Liberty Bank. Drobnic scheduled that debt on Schedule D in the amount of $698,000.00, but listed the entire claim as unsecured (the collateral is valued at $0.00). If the debt is noncontingent and liquidated, then Drobnic's unsecured debt exceeds the Section 109(e) unsecured debt limit because the unsecured portion of a secured claim is considered unsecured for determining Chapter 13 eligibility under Section 109(e).[46]

But the Court is not comfortable making that determination on the limited evidence before the Court. Accordingly, the Court will defer ruling on Drobnic's eligibility for Chapter 13 relief pending an evidentiary hearing to determine whether the debt owed to Liberty Bank is noncontingent and liquidated.

## Conclusion

Section 109(e) plainly indicates a congressional intent to limit those eligible for the benefits of Chapter 13. Under the Court's ruling, individuals with debts exceeding the applicable Section 109(e) limits (such as the Debtors in *In re De La Hoz*, *In re Manganaro*, and *In re Ruiz*) cannot circumvent those limits by filing their Chapter 13 petition and hoping enough creditor fail—for whatever reason—to file claims. Nor can debtors (such as the Debtors in *In re Williams* and possibly the Debtor in *In re Drobnic*) circumvent Section 109(e) by simply designating virtually all of their claims as contingent or unliquidated.

---

[46] *See e.g., Smith v. Rojas*, 435 B.R. 637, 648-49 (9th Cir. BAP 2010); *In re Bernick*, 440 B.R. 449, 450-51 (Bankr. E.D. Va. 2010); *In re Smith*, 419 B.R. 826, 831-32 (Bankr. C.D. Cal. 2009); *In re Weiser*, 391 B.R. 90, 908 (Bankr. S.D. Fla. 2008); *In re Toronto*, 165 B.R. 746, 755 (Bankr. D. Conn. 1994) *In re Rifkin*, 124 B.R. 626, 629 (Bankr. E.D.N.Y. 1991); *In re Jerome*, 112 B.R. 563, 566 (Bankr. S.D.N.Y. 1990).

For the reasons set forth in this Memorandum Opinion, the Court will enter appropriate Orders in each of the above-captioned Chapter 13 cases on the Chapter 13 Trustee's Motions to Dismiss and Objections to Confirmation.

**DATED** in Chambers at Fort Myers, Florida, on  May 05, 2011.

*/s/ David H. Adams*

DAVID H. ADAMS
United States Bankruptcy Judge

Copies to be provided via CM/ECF